JUDGE SULLIVAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 6011

| | |
|---|---|
| NMD INTERACTIVE, INC. d/b/a STREETEASY.COM, | Civ. Action No. _____ |
| Plaintiff, | |
| v. | COMPLAINT |
| DOUGLAS M. CHERTOK, | JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE |
| Defendant. | |

RECEIVED AUG 26 2011 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff NMD Interactive, Inc. d/b/a StreetEasy.com ("StreetEasy" or the "Company"), through its undersigned counsel Clarick Gueron Reisbaum LLP, as and for its Complaint against defendant Douglas M. Chertok, alleges as follows:

## NATURE OF THE ACTION

1. StreetEasy brings this action to recover control of its internet domain names and to protect itself from the increasingly erratic behavior of defendant Douglas M. Chertok, one of the Company's founders and a former member of its board of directors. In recent weeks, Chertok has deceptively attempted to access StreetEasy's bank account on no fewer than five occasions and falsely held himself out to be an agent of StreetEasy, and previously has misused StreetEasy's funds for his own personal advantage and persistently refused to yield control of StreetEasy's internet domain names.

2. Chertok and non-parties Michael Smith and Nataly Kogan together founded StreetEasy in 2005, and incorporated it under the name NMD Interactive, Inc. – with "NMD" standing for Nataly, Michael, Doug – in September of that year. Their goal was to create an internet business that would aggregate residential real estate listings, real estate sales data, and

1

related information for the New York metropolitan area (and eventually other areas) and make that information available to the public. They named their website "StreetEasy" and chose the internet address "streeteasy.com".

3. Each of Kogan, Smith, and Chertok – and certain other early participants in the business – made specific contributions to the new company in exchange for their equity interest.

4. One of Chertok's contributions was the streeteasy.com domain name, which he had registered in April 2005. Chertok subsequently registered certain related domain names on the company's behalf, including streeteasy.net and streeteasy.tv (the "Related Domain Names").

5. In 2006, StreetEasy discovered that Chertok had stolen $55,000 from the Company. Shortly after discovering this theft, the Company eliminated Chertok's status as co-signer on the Company's bank account. StreetEasy's shareholders elected a new board of directors – excluding Chertok – the following year, and the Company ultimately severed all relations with Chertok (other than his status as a shareholder).

6. Both before and after his separation from the Company, Chertok has persistently failed to provide the Company with access to its own internet domain names, despite the Company's repeated requests and Chertok's repeated acknowledgement of the Company's right to exclusive possession and control of its domain names. Indeed, he has agreed to provide the Company with access several times. However, Chertok never actually has provided the Company with possession and control of its domain names, apparently seeking to use the accident of his own control over the domain names as leverage against the Company.

7. Chertok recently has engaged in erratic behavior further endangering StreetEasy. In June 2011, Chertok appeared without warning at StreetEasy's bank to demand access to StreetEasy's bank account. The bank's staff quickly realized that StreetEasy had removed

Chertok from any authority over the bank account, refused his requests, and notified StreetEasy of his conduct. Undeterred, Chertok continued to appear at different bank branches and made no fewer than four additional attempts to access StreetEasy's accounts.

8. With this action, StreetEasy seeks finally to recover its rightful property and to protect itself from Chertok's increasingly bizarre, and potentially criminal, activities. Specifically, StreetEasy requests an order (a) requiring Chertok to fulfill his long overdue obligation to provide StreetEasy with exclusive possession and control over the streeteasy.com domain and the Related Domain Names also belonging to the Company, (b) prohibiting Chertok from holding himself out as a representative of StreetEasy or NMD to any third party, and (c) requiring Chertok to pay damages to StreetEasy resulting from his misconduct.

## THE PARTIES

9. Plaintiff NMD Interactive, Inc. d/b/a StreeEasy.com is a Delaware corporation with its principal place of business in New York City. StreetEasy operates the website StreetEasy.com, which provides users with a wealth of information regarding the New York City real estate market, including searchable databases of real estate listings.

10. Defendant Douglas M. Chertok is an individual residing in New York County, New York. Chertok was one of StreetEasy's three co-founders and was a member of its board of directors until October 2007.

## JURISDICTION AND VENUE

11. This action asserts claims arising under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over StreetEasy's state law claims under 28 U.S.C. § 1367(a).

12. This Court has personal jurisdiction over Defendant Chertok because he resides in New York City.

13. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(1) because defendant Chertok resides in this district and pursuant to 29 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND

**StreetEasy Launches In 2005**

14. Michael Smith, Nataly Kogan, and Chertok founded StreetEasy in early 2005. The idea for the business was to provide residential real estate consumers with better access to information regarding the markets in their geographic area. The Company generates revenue both by selling advertising space on its website and by contracting with real estate brokers and developers to display their listings prominently in users' search results. Under Smith's leadership, StreetEasy became a dynamic business that is at the forefront of its field.

15. As one of its founders, Chertok contributed to StreetEasy the "streeteasy.com" domain name, which he had registered in April 2005, in exchange for equity in the Company. Chertok also undertook to seek venture capital financing for the Company and to register StreetEasy's intellectual property, which included both the Company's trademarks the Related Domain Names.

**StreetEasy Owns Trademarks For STREETEASY and STREETEASY.COM**

16. Although StreetEasy owns the trademarks and the domain names for StreetEasy and StreetEasy.com, Chertok has obstructed StreetEasy's right to full access to those domain names.

17. StreetEasy owns and uses several trademarks in connection with its operation of the StreetEasy website, including STREETEASY (Reg. No. 3,476,680) and STREETEASY.COM (Reg. No. 3,593,224).

18. StreetEasy filed for federal trademark registration of its STREETEASY mark on July 10, 2006. The mark was registered by the United States Patent and Trademark Office ("USPTO") on July 29, 2008. A true and correct copy of the USPTO's record for StreetEasy's registration for STREETEASY is attached as Exhibit A.

19. StreetEasy filed for federal trademark protection of its STREETEASY.COM mark on July 10, 2006. The mark was registered by the USPTO on April 22, 2008. A true and correct copy of the USPTO's record for StreetEasy's registration for STREETEASY.COM is attached as Exhibit B.

20. Consistent with his contribution of the streeteasy.com domain name to the Company, Chertok himself caused StreetEasy to register its STREETEASY and STREETEASY.COM marks for the Company.

21. StreetEasy has continuously used its STREETEASY and STREETEASY.COM marks in commerce both before and after those marks' registration with the USPTO.

22. To the best of StreetEasy's knowledge, no one else has ever used the marks STREETEASY or STREETEASY.COM.

23. Thus, only StreetEasy – not Chertok or anyone else – has the right to use the names StreetEasy and StreetEasy.com.

**Chertok Registration of the StreetEasy Domain Names**

24. An Internet website's uniquely-identifying address – typically ending (for U.S.-based websites) in ".com," ".org," ".gov," or ".net" – is known as its "domain name." A

website also has a numerical "IP address," which is a sequence of four numbers separated by periods. Because words are easier to use and remember than numbers, domain names entered by Internet users are translated into IP addresses through a service known as a DNS server.

25. To create and register a new domain name, an individual or corporate user must work through an intermediary known as a "domain name registrar." Specifically, a user must create an account with a domain name registrar, provide the registrar with certain information about the person or entity on whose behalf the domain name is sought to be registered, and pay a fee.

26. Chertok registered the streeteasy.com domain name, through domain name registrar GoDaddy.com, Inc. ("GoDaddy"), on April 30, 2005. A true and accurate copy of the Order Confirmation from GoDaddy for the streeteasy.com domain name is attached hereto as Exhibit C.

27. By registering streeteasy.com using a GoDaddy account to which only he knew the username and password, Chertok effectively gave himself exclusive access to the streeteasy.com domain name.

28. Following his contribution of the streeteasy.com domain name to StreetEasy, Chertok registered the Related Domain Names through GoDaddy on StreetEasy's behalf. These additional registrations took place on June 26, 2006.

29. By registering the Related Domain Names using a GoDaddy account to which only he knew the username and password, Chertok effectively gave himself exclusive access to the Related Domain Names.

30. Although Chertok contributed the streeteasy.com domain name to StreetEasy and registered the Related Domain Names on StreetEasy's behalf, he listed the owner of

streeteasy.com and the Related Domain Names, unbeknownst to StreetEasy, as Vast Ventures LLC.  On information and belief, Vast Ventures LLC is an entity controlled by Chertok.

31.	By virtue of his control over the streeteasy.com domain name and the Related Domain Names, Chertok possesses substantial control over access to StreetEasy's website.

32.	StreetEasy has never been able to log onto the GoDaddy account that contains the registration information for streeteasy.com and the Related Domain Names.

**Chertok Refuses To Relinquish Control of StreetEasy's Domain Names**

33.	In approximately August, 2005, Smith learned that Chertok had retained the password to the GoDaddy account through which streeteasy.com and the Related Domain Names were registered and that no one else at the Company had access to the account.

34.	Smith immediately demanded that Chertok transfer possession and control of streeteasy.com and the Related Domain Names to StreetEasy.  Chertok agreed that StreetEasy was entitled to possession and control of the domain names, but failed actually to relinquish control.

35.	In February 2006, StreetEasy again requested possession and control of the streeteasy.com domain name from Chertok.  Again, Chertok indicated that he would provide StreetEasy with possession and control, but again he failed to do so.  In an email, dated February 27, 2006, Chertok wrote to Smith: "I have a few GD [GoDaddy] accounts and I think the password links to all of them.  Can you tell me the nameserver change you need to do and I'll take care of it today.  Later this week I'll decouple the accounts and give you the SE password so you can do as you need."  The same day Smith replied with the name server information Chertok requested and requested that Chertok take the promised action "sooner the better."  Again, Chertok failed to do so.

36.     StreetEasy tried again to recover control of its domain names in July 2006.  In an email, dated July 23, 2006, Smith again requested that Chertok "transfer the domains into NMD."  Chertok immediately responded:  "Re transfers – handling that as part of IP clean-up.  Should have this week."  Chertok, again, failed to make the promised transfer.

37.     On one occasion, Chertok went so far as to provide StreetEasy with a username and password that purportedly controlled access to the Company's domain names – but which were in fact erroneous.

38.     StreetEasy requested that Chertok provide possession and control of the StreetEasy domain names yet again in April, 2009, again in October 2009, and most recently in August 2011.

39.     Chertok's persistent refusal to relinquish possession and control of StreetEasy's domain names has disrupted the Company's business, burdened the Company's management, and caused the company to incur significant costs – including but not limited to legal fees associated with prior efforts to recover such possession and control.  Further, Chertok's refusal to provide StreetEasy with access to the domain names has left Chertok with the unique ability to interfere with StreetEasy's business.

40.     StreetEasy has filed this action to obtain its rightful control of the streeteasy.com domain name and the Related Domain Names.

**Chertok Steals $55,000 from StreetEasy**

41.     In the summer of 2006, StreetEasy discovered that Chertok surreptitiously wrote himself 10 checks of $5,500 each from StreetEasy's bank account, for a total of $55,000.

42.     Specifically, on two different dates in July 2006, Chertok wrote himself five checks from StreetEasy's bank account and wrote "Salary" on each such check.

43. Although, at that time, Chertok was a signer on StreetEasy's bank account, he had no authority to make these payments to himself.  Chertok was not entitled to receive any salary from StreetEasy at this (or any) time.

44. On or about August 31, 2006, Chertok was removed as a signer on the StreetEasy corporate bank account with Commerce Bank (now TD Bank).

45. On or about October 2007, the StreetEasy shareholders elected a new board of directors, from which Chertok was excluded.  Chertok has had no employment, consulting, contracting, or agency relationship with StreetEasy or its board of directors since October 2007.

**Chertok Attempts to Steal StreetEasy Funds from TD Bank**

46. Unexpectedly, on or about June 17, 2011, Chertok appeared at the TD Bank branch located in Manhattan at 94th Street and Broadway (where Smith and Chertok first opened StreetEasy's corporate bank accounts) and attempted to access information about StreetEasy's accounts held at the bank.  Notwithstanding the fact that Chertok had been ousted from StreetEasy's board in 2007 and had had no involvement with the running of StreetEasy since at least that time, he falsely told employees of TD Bank that he was a representative of StreetEasy, and attempted to be added to the account as a signer.  Chertok even presented copies of StreetEasy's original business resolutions (dating back to 2005), the deposit slip for the $10.00 used to open the account, and the original signature cards.  Bank representatives realized that Chertok was no longer authorized as a signatory to the account and refused to grant him access.

47. Two days later, on or about Sunday, June 19, 2011, Chertok returned to the 94th Street TD Bank branch and urged a different bank employee to provide him with documentation regarding the accounts.  Seeing that Chertok was not a signatory on the account, the employee

refused to provide Chertok with information. Undeterred, Chertok returned again on or about June 20, to demand that a supervisor provide him with information about StreetEasy's accounts.

48.     Following these incidents, TD Bank placed an "alert" on StreetEasy's accounts such that StreetEasy would be notified if any non-authorized person – including and especially Chertok – attempted to access information about or funds held in StreetEasy's accounts.

49.     Subsequently, on or about Wednesday, June 29, 2011, Chertok entered a different branch office of TD Bank located at 21st Street and Park Avenue, also in Manhattan, and again attempted to access StreetEasy's accounts. On this occasion, too, Chertok falsely represented that he was an agent or representative of StreetEasy. Chertok was not successful in accessing the StreetEasy's accounts on this occasion.

50.     Once again, on or about July 8, 2011, Chertok entered the 94th Street TD Bank branch and attempted to access StreetEasy account funds and information. This time, he requested that a debit card linked to StreetEasy's accounts be issued in his name. He was again unsuccessful.

51.     During Chertok's attempts to access StreetEasy's TD Bank account, bank staff informed Chertok that StreetEasy CEO Smith's authorization would be required before Chertok would be given access. Chertok tried to evade this requirement by falsely stating to the TD bank staff that Smith was unavailable due to vacation.

52.     At the suggestion of TD Bank personnel, representatives of StreetEasy contacted the New York City Police Department concerning Chertok's conduct.

**<u>Chertok Misrepresents His Status at StreetEasy</u>**

53.     Chertok was one of three co-founders of StreetEasy. Since October 2007, he has had no employment, consulting, contracting, or agency relationship with StreetEasy or its board

of directors. As such, he has had no right to hold himself out as a representative of StreetEasy in any capacity since that time. Chertok's only current relationship to StreetEasy is as a shareholder (and, on information and belief, as the managing member of another shareholder).

54. StreetEasy has notified Chertok on numerous occasions that he has no relationship with the Company other than as a shareholder, and repeatedly has instructed him to refrain from any contrary representations. Nevertheless, Chertok has consistently and willfully misstated his connection to StreetEasy for a variety of improper purposes.

55. Most egregiously, in his effort to obtain funds from StreetEasy's bank accounts, Chertok represented himself to TD Bank as an agent of StreetEasy with authority to access StreetEasy's bank accounts there.

56. In his profile for Dace Ventures, Chertok describes himself as "the founder of StreetEasy" and states that he "currently serves on the board … of … StreetEasy." A copy of Chertok's Dace Ventures profile is attached as Exhibit D. This is false.

57. On his LinkedIn profile, Chertok states that he is a "Founder, Director" of StreetEasy, and that he has held those positions from "January 2004 – Present (7 years, 8 months)." A copy of Chertok's LinkedIn profile is attached as Exhibit E. This is false.

58. On the website for Vast Ventures, Chertok describes himself as "the founder of StreetEasy." A copy of Chertok's Vast Ventures profile is attached as Exhibit F. This is false, because Chertok is one of three co-founders.

59. Most recently, and shortly after the launch of Google, Inc.'s "Google+" service, Chertok created – without authorization from StreetEasy – a Google+ account in the name of StreetEasy and linked that account with his own Google+ account, thus creating the appearance

of a relationship with the Company. A screenshot showing the Google+ account created by Chertok is attached as Exhibit G.

60. In light of Chertok's thefts and attempted thefts from StreetEasy, the Company views Chertok as untrustworthy and any association with him as damaging to the Company's reputation. For these reasons, StreetEasy cannot tolerate Chertok's continuing misrepresentations that he is "the" founder or a director or board member of StreetEasy – or indeed that he has any other present association with the Company than as a shareholder.

### FIRST CAUSE OF ACTION
### Cybersquatting Under 15 U.S.C. § 1125(d)

61. Plaintiff StreetEasy repeats and realleges the allegations above as though fully set forth herein.

62. At all times relevant to this action, StreetEasy has been the owner of the marks STREETEASY.COM and STREETEASY.

63. On or about April 30, 2005, Chertok registered the domain name streeteasy.com.

64. On or about September 2005, Chertok contributed the streeteasy.com domain name to StreetEasy and that domain name became property of the Company.

65. On or about June 26, 2006, Chertok registered the Related Domain Names in his own name, also on behalf of StreetEasy.

66. While assigning and/or making these registrations on behalf of StreetEasy, Chertok actually intended to – and did – retain control of the domain names for his own purposes.

67. Chertok has continued to register, traffic in, and use the domain name streeteasy.com continuously from April 30, 2005 until today.

68. Chertok has continued to register, traffic in, and use the Related Domain Names continuously from June 26, 2006 until today.

69. The domain name streeteasy.com is identical to the marks STREETEASY and STREETEASY.COM.

70. The Related Domain Names are confusingly similar or identical to the marks STREETEASY and STREETEASY.COM.

71. The marks STREETEASY.COM and STREETEASY were distinctive at the time Chertok registered the domain name streeteasy.com (and remain so today).

72. Chertok has a bad faith intent to profit from StreetEasy's marks in STREETEASY.COM and STREETEASY through his registration, purported ownership, and de facto control of the domain name streeteasy.com and the Related Domain Names.

73. By engaging in the activities described above, Chertok has engaged in and continues to engage in cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

74. StreetEasy may be irreparably injured and damaged by Chertok's cybersquatting insofar as Chertok may deploy the domain name streeteasy.com and the Related Domain Names in a way that leads to the confusion of the public and may exert his control over the domain name streeteasy.com and the Related Domain Names so as to disrupt the functionality of StreetEasy's website.

75. The intentional nature of the aforementioned acts by Chertok make this an exceptional case pursuant to 15 U.S.C. § 1117(a).

76. By reason of the foregoing, StreetEasy is entitled to injunctive relief against Chertok requiring transfer possession and control of streeteasy.com and the Related Domain Names to StreetEasy and to damages as provided in 15 U.S.C. § 1117(d).

## SECOND CAUSE OF ACTION
**Breach of Fiduciary Duty – Misappropriation of Domain Name**

77. Plaintiff StreetEasy repeats and realleges the allegations above as though fully set forth herein.

78. At all times relevant to this action, Chertok has owed a continuing duty of loyalty to StreetEasy with respect to ownership and control of the streeteasy.com domain name and the Related Domain Names.

79. By registering (or maintaining the registration of) the streeteasy.com domain name and the Related Domain Names in his personal capacity instead of on behalf of StreetEasy, Chertok has breached his duty of loyalty to StreetEasy.

80. By persistently refusing to transfer possession and control of the streeteasy.com domain name and the Related Domain Names to StreetEasy, Chertok has perpetrated a continuing breach of his duty of loyalty to StreetEasy that remains ongoing today.

81. The StreetEasy website is StreetEasy's principal business asset. Therefore, possession and control of the domain name where the website resides is of incalculable value and importance to StreetEasy. Chertok's refusal to relinquish possession and control of the streeteasy.com domain name injures StreetEasy every day that it is allowed to continue. StreetEasy has no adequate remedy at law for this continuing injury.

82. By reason of the foregoing, StreetEasy is entitled to injunctive relief against Chertok requiring transfer of possession and control of the streeteasy.com and the Related Domain Names to StreetEasy.

83. By reason of Chertok's breaches of his fiduciary duties, the Company has experienced disruptions in its business, unnecessary burdens upon its management, and significant costs. The Company is entitled to damages for these expenses, in an amount to be proved at trial.

## THIRD CAUSE OF ACTION
## Conversion of Domain Name

84. Plaintiff StreetEasy repeats and realleges the allegations above as though fully set forth herein.

85. Because Chertok contributed the streeteasy.com domain name to StreetEasy when the Company was founded, and because Chertok agreed to and was obligated to register the Related Domain Names for the benefit of StreetEasy, the Company has at all times relevant to this action had the clear right to possess those domain names and all information needed to access and control them.

86. By refusing to relinquish possession and control of streeteasy.com domain name and the Related Domain Names, Chertok has assumed and exercised control over those assets intentionally and without authority, thus interfering with StreetEasy's right of possession.

87. By virtue of Chertok's conversion of the streeteasy.com domain name and the Related Domain Names, StreetEasy has been harmed in its efforts to conduct a stable, successful business based upon a website identified by a domain name to which it is entitled to have unfettered access.

88. By reason of the foregoing, StreetEasy is entitled to an injunction requiring Chertok to transfer to StreetEasy possession and control of streeteasy.com and the Related Domain Names.

## **FOURTH CAUSE OF ACTION**
### **Declaratory Judgment**

89. Plaintiff StreetEasy repeats and realleges the allegations above as though fully set forth herein.

90. Chertok was one of three co-founders of StreetEasy. However, Chertok has had no employment, consulting, contracting, or agency relationship with StreetEasy or its board of directors since October 2007.

91. Nevertheless, Chertok has consistently and willfully misstated his connection to StreetEasy for a variety of improper purposes.

92. Specifically, Chertok has falsely stated that he remains a board member of StreetEasy, that he was authorized to access StreetEasy's bank accounts, and that he was otherwise affiliated with StreetEasy.

93. Chertok's false statements concerning his purported affiliation with StreetEasy are ongoing – including but not limited to statements on various websites stating that he "currently" serves on the StreetEasy board or suggesting that he was the Company's sole founder.

94. Chertok has refused to accede to StreetEasy's demands that he cease misrepresenting his relationship with StreetEasy.

95. Accordingly, an actual controversy exists between Chertok and StreetEasy concerning his ongoing misrepresentations of the purported affiliation between them.

96. Thus, plaintiff StreetEasy seeks a declaration that Chertok is not a member of the StreetEasy board, was not the sole founder of StreetEasy, and has no present relationship with StreetEasy other than as a shareholder.

97. Plaintiff StreetEasy also seeks an injunction prohibiting Chertok from making any untruthful statements concerning his purported affiliation with StreetEasy.

## Prayer for Relief

WHEREFORE, plaintiff StreetEasy respectfully prays that this Court enter judgment in its favor against Chertok on each and every count, and further that this Court:

A. Enter an injunction requiring Chertok to transfer to StreetEasy complete, exclusive, and unconditional possession and control of the streeteasy.com domain name and the Related Domain Names;

B. Declare that Chertok is not a member of the StreetEasy board, was not the sole founder of StreetEasy, and has no present relationship with StreetEasy other than as a shareholder.

C. Enjoin Chertok from holding himself out as director, employee, consultant, agent, or representative of StreetEasy;

D. Enter an injunction requiring Chertok to correct all prior and continuing inaccurate characterizations of his relationship with StreetEasy, including but not limited to those appearing on websites associated with Vast Ventures, Dace Ventures, LinkedIn, and Google+.

E. Award StreetEasy damages against Chertok, in an amount to be determined at trial;

F. Award StreetEasy such nominal, exemplary, or punitive damages as the Court may deem just and proper;

G. Award StreetEasy its attorneys' fees and costs incurred in connection with this action; and

H.  Award StreetEasy such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
August 25, 2011

CLARICK GUERON REISBAUM LLP

By: _____
Emily Reisbaum
Isaac B. Zaur

40 West 25th Street
New York, New York 10010
Phone: (212) 633-4310
Fax: (646) 478-9484

*Counsel for Plaintiff NMD Interactive, Inc.*